UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LYNN PHIPPS, | : | Case No. 3:11-cv-51 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

## ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT SHALL BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE IS CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 19-37) (ALJ's decision)).

I.

Plaintiff filed applications for DIB and SSI on July 14, 2003, alleging disability since January 8, 2001 due to left ankle problems, bilateral carpal tunnel syndrome, a bulging disc in her back, and mental impairments.[1] (Tr. 69-71). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 43-46, 48-50). Two hearings were

---

[1] Plaintiff's pleadings only raise arguments regarding the ALJ's treatment of the evidence related to her mental impairments. Therefore, the Court will only address the facts related to these arguments.

held before the ALJ who determined that Plaintiff was not disabled.[2] (Tr. 754-70, 771-805). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8). Plaintiff then commenced an action in federal court pursuant to 42 U.S.C. § 405(G), for judicial review of the Commissioner's final decision. The Magistrate Judge issued a Report and Recommendations on October 10, 2009, finding that the Commissioner failed to fully develop the record and that Plaintiff did not receive a full and fair hearing (Tr. 840-851), and recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings. (Tr. 851). The Report and Recommendations was adopted by Order dated October 27, 2009. (Tr. 852). *See also* Case No. 3:08cv365.

A third hearing was held before an ALJ on October 25, 2010, who again determined that Plaintiff was not disabled. (Tr. 816-838). In his decision, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[3] to perform a reduced range of sedentary work,[4] including jobs that existed in significant numbers in the national

---

[2] Plaintiff appeared and testified after voluntarily electing to waive her right to be represented by counsel. (Tr. 19).

[3] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

economy, and that Plaintiff was therefore neither disabled nor entitled to DIB or SSI. (Tr. 816-38). The Appeals Council denied Plaintiff's request for review. (Tr. 806-808). Subsequently, Plaintiff commenced this action in federal court, pursuant to 42 U.S.C. § 405(G), for judicial review of the Commissioner's final decision.

Plaintiff attained age 50 on April 14, 2011, at which time she would be classified as a person "approaching advanced age." However, for purposes of this decision, she is considered a younger person in the eyes of Social Security (she was 45 years old on the date of the ALJ's decision). (Tr. 20, 836). Plaintiff has an eleventh grade or "limited" education.[5] (*Id.*) Plaintiff worked in the past as a machine operator and mail sorter. (Tr. 20).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the disability insured-status requirements of the Act on January 8, 2001, the date the claimant stated she became unable to work, and continues to meet them through March 31, 2007.

2. The claimant has not performed substantial gainful activity since January 8, 2001, the alleged disability onset date.

3. The medical evidence establishes "severe" impairments of affective disorder characterized by major depression, borderline intellectual functioning, spinal strain aggravated by obesity, musculoskeletal impairment of the left foot, and carpal tunnel syndrome/residual effects of upper extremity injuries but that the claimant does not have an impairment or combination fo impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

---

[5] Plaintiff has reading skills at a second grade level and WAIS-III test results were in the range generally indicative of mental retardation. (Tr. 23).

-3-

4. The claimant's allegations of disability are not supported by substantial objective medical evidence or clinical findings and cannot be considered credible when evaluated under the guidelines of 20 CFR 404.1529 and 416.929.

5. The claimant is capable of performing the basic functional requirements of light work, as such work is defined for Social Security purposes, subject to the following additional limitations: no standing or walking more than two hours during any given eight-hour workday; the claimant can sit as much as six hours during any given eight-hour workday, but she should be permitted to alternate between sitting and standing as needed (i.e., the ability to shift position momentarily to avoid cramping); no forceful gripping; the claimant is limited to performing simple tasks of a low-stress nature (i.e., no direct dealing with the general public, no production quotas, and no close "over-the-shoulder" supervision).

6. The claimant is unable to perform her past relevant work.

7. The claimant is 45 years old and is classified as a "younger individual" (20 CFR 404.1563 and 416.963).

8. The claimant has an 11th grade or "limited" education (20 CFR 404.1564 and 416.964).

9. The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968).

10. Based on an exertional capacity of light work, and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4, Section 416.969 of Regulations No. 16, Vocational Rule 202.18 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of not "disabled."

11. Although the claimant's functional limitations do not permit her to perform the full range of light work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs are x-ray inspector, production checker, jewelry polisher, and table worker. There are as many as 3,800 such jobs at the light level of exertion in the region of Dayton, Ohio. There are 3,500 additional such jobs at the sedentary level of

>   exertion in the Dayton, Ohio region. Those jobs exist in proportionate numbers in the national economy as well. Such jobs are representative of a significant number of jobs in the national economy that the claimant remains capable of performing despite her documented impairments.
>
> 12. The claimant was not "disabled," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 35-36).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 37).

On appeal, Plaintiff argues that: (1) the ALJ erred by failing to properly evaluate the opinion of psychological consultative examiner, Dr. Boerger, and by finding that Plaintiff was not disabled by her psychological impairments; and (2) the ALJ erred by relying on the opinion of psychological expert, Dr. Buban, because he did not have the opportunity to review the entire medical record. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that

-5-

finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

Plaintiff was seen for a psychological consultative evaluation, performed by psychologist Dr. Boerger, on February 11, 2004. (Tr. 152-58). Dr. Boerger identified Plaintiff's diagnoses as major depressive disorder, single episode, severe; a reading disorder; and borderline intellectual functioning. (*Id.*) He opined that the Plaintiff's ability to maintain attention to perform simple, repetitive tasks was moderately to markedly impaired, and that her ability to withstand the stress and pressures associated

with day-to-day work activity was markedly impaired as a result of depression. (*Id.*) He indicated that Plaintiff's symptomatic GAF score was 48 and her functional GAF score was 50.[6]

On March 17, 2004, Plaintiff was admitted on a 72-hour emergency basis to Upper Valley Medical Center's psychiatric unit due to suicidal ideation. (Tr. 386-88). Her diagnoses were identified as depression and moderate psychosocial stresses. (*Id.*) She was assigned a GAF of 40.[7] (*Id.*)

On April 7, 2004, Psychologist Robelyn Marlow evaluated Plaintiff's mental status based upon the evidence of record without examining the Plaintiff. (Tr. 162). Dr. Marlow diagnosed affective (depressive) disorder. (*Id.*) She concluded that Plaintiff experiences moderate limitation in her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace. (*Id.*) Dr. Marlow noted that Plaintiff was not in mental health treatment nor prescribed medication. (*Id.*)

---

[6] The Global Assessment of Functioning ("GAF") is a numeric scale (1 through 100) used by mental health clinicians and physicians to subjectively rate the social occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

[7] A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

Plaintiff began treatment at Miami County Mental Health Center ("MCMH") on March 29, 2004. (Tr. 331). Plaintiff's treating mental health counselor, LaDonna Ross, CNP, performed an initial psychiatric evaluation on October 11, 2005. (Tr. 446-48). She reported that Plaintiff's mood was severely depressed, angry, and irritable, and that she had limited insight and judgment. (*Id.*) Ms. Ross diagnosed Plaintiff with major depressive disorder and post traumatic stress disorder. (*Id.*) On subsequent examinations, Plaintiff's speech was rapid, she was tearful, unkept, and she appeared angry and depressed. (Tr. 421-46). Ms. Ross opined that Plaintiff was extremely irritable, frequently overwhelmed, and that she became angry at minor difficulties. (Tr. 418). Ms. Ross noted that Plaintiff's medical problems overwhelmed her, and she was unable to focus, concentrate, or deal with any stress. (*Id.*) Ms. Ross opined that Plaintiff would have difficulty working with others since she is so easily irritated and loses her temper, and that she would not be an appropriate candidate for employment. (*Id.*)

Dr. Boerger examined Plaintiff for a second time on January 25, 2006. (Tr. 407-14). He reported that Plaintiff's affect was tearful and irritable but appropriate to the situation, she was alert and oriented. (*Id.*) Plaintiff reported that she has crying spells "all the time", decreased appetite, difficulty sleeping, lack of energy and interest in activities, and anger outbursts. (*Id.*) Plaintiff was able to recall 0 out of 4 objects after 5

-8-

minutes and was unable to perform serial 7's[8] beyond 4 responses. (*Id.*) Dr. Boerger diagnosed major depressive disorder, single episode; and moderate and borderline intellectual functioning, assigning a GAF of 51. (*Id.*) He opined that Plaintiff's ability to relate to others, including fellow coworkers and supervisors, was moderately to markedly impaired, her ability to maintain attention to perform simple repetitive tasks was moderately impaired, and her ability to withstand the stress and pressures of day-to-day work activity was moderately to markedly impaired due to her depression, irritability, and low frustration tolerance. (*Id.*)

In July 2006, Nurse Ross indicated that Plaintiff suffered from major depression, recurrent with psychosis, rule out bipolar disorder. (Tr. 418). She opined that Plaintiff "would not be an appropriate candidate for employment at this time." (*Id.*)

Plaintiff saw Nurse Ross and received therapy at MCMH from 2007-2008. (Tr. 686-89, 632-71; 672-85). Plaintiff returned to MCMH in March, having stopped treatment in 2008. At intake, she was diagnosed with major depressive disorder, recurrent, moderate; and assigned a GAF score of 53.[9] (Tr. 1103-04). Her GAF score remained the same at discharge in June. (Tr. 1131).

---

[8] Serial sevens, counting down from one hundred by sevens, is a clinical test used to test mental function. On its own, the inability to perform serial sevens is not diagnostic of any particular disorder or impairment, but is generally used as a quick and east test of concentration and memory in any number of situations where clinicians suspect that these cognitive functions might be affected.

[9] A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, poor school functioning (e.g., few friends, conflicts with peers or co-workers).

The opinion of psychological medical expert, Dr. Eileen Buban, was solicited at the July 2006 hearing. (Tr. 789-97). Based on her review of the records, Dr. Buban testified that Plaintiff experienced symptoms of depressive disorder. (*Id.*) She testified that the record could not establish that Plaintiff satisfied Listing 12.04 and that the record did not support a diagnosis of major depression, recurrent with psychosis, as opined by LaDonna Ross. (*Id.*) She testified that Plaintiff had many interpersonal and situational stresses, as well as relationship difficulties and that Plaintiff's individual counseling at MCMH did not seem to be working because Plaintiff was unable to get along with at least two therapists. (*Id.*) She concluded that Plaintiff could perform jobs that were simple tasks with no high production standards, involved only casual contact with coworkers and supervisors, and which did not involve close-knit teamwork or dealing with the public. (*Id.*)

Treatment notes dated February 13, 2008 state that Plaintiff "remains very depressed, that she has not been taking showers... remains very overwhelmed." (Tr. 682). Her mental status was reported as: "More depressed. Helpless. Hopeless." (*Id.*) Plaintiff was not seen at MCMH for approximately two years, stopping in early 2008 and returning to treatment around March of 2010. In her Adult Diagnostic Assessment on March 11, 2010, her symptoms remained relatively the same. (Tr. 1092-1105). She was diagnosed with major depression, recurrent, moderate; PTSD; GAD; and panic disorder. (*Id.*) She was assigned a GAF of 53. (*Id.*) On mental status examination, her mood was depressed, anxious, and irritable. (*Id.*)

-10-

At the hearing in July of 2006, Plaintiff testified that her most severe problem was depression. (Tr. 778). She testified: "I'm just so disgusted. I don't care if I live or not." (Tr. 789). At the most recent hearing, Plaintiff testified that she did not cook, vacuum, sweep, mop, wash dishes, attend church, visit friends or relatives, go to movies, or have any hobbies. She testified that her depression causes her to have trouble concentrating and that she doesn't want to be around people. She testified: "Sometimes I don't hear. Somebody could be talking…and I don't hear them." (Tr. 1214).

First, Plaintiff alleges that the ALJ erred by failing to properly evaluate the opinion of psychological examiner, Dr. Boerger, and by finding that Plaintiff was not disabled by her psychological impairments.

Dr. Boerger's findings and the record are not consistent with an RFC finding of only moderate functional limitations. In both 2004 and 2006, Plaintiff's treating physician, Dr. Boerger, opined that Plaintiff was markedly impaired in her ability to relate to others and her ability to deal with the stress associated with day-to-day activity. The Commissioner focuses only on the evidence that supports moderate functional restrictions, when such a focus is not consistent with the record. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position").

In determining Plaintiff's RFC, the ALJ also considered the opinion of reviewing psychologist Dr. Marlow. In 2004, Dr. Marlow opined that Plaintiff, despite her moderate limitations, "would work at a steady pace to sustain simple repetitive tasks" in

-11-

"situations where duties are relatively static." (Tr. 162). Although Dr. Marlow found that the Plaintiff was not significantly limited in her ability to get along with coworkers or peers without exhibiting behavioral extremes and not significantly limited in her ability to maintain socially appropriate behavior (Tr. 161), she signed off on a medical advice request where it was documented that the Plaintiff "was quite unpleasant on the phone, and my phone calls with her were either very curt (on her part), or were given to the supervisor because she was yelling at me." (Tr. 159). Therefore, Dr. Marlow's opinion is unsupported by the record and certainly cannot be relied upon to provide substantial evidence in support of the ALJ's findings. "The opinions of non examining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). The ALJ erred in relying, even partially, on the inconsistent and unsupported opinion of Dr. Marlow over the opinions of examining and treating sources.

Plaintiff's treatment notes from Miami County Mental Health Center offer support for Dr. Boerger's marked limitations as well. In treatment notes on 4/27/05, Plaintiff yelled and left abruptly. (Tr. 556). On 4/13/05, she cried and raised her voice often. (Tr. 560). Plaintiff was seen for a psychiatric evaluation on October 11, 2005 by LaDonna Ross, CNP, at which time she was diagnosed with major depressive disorder, recurrent, severe, and PTSD. Plaintiff was assigned a GAF of 55. (Tr. 446-48). On mental status examination, her mood was severely depressed, angry, and irritable. (*Id.*) Her affect was

flat and her behavior was agitated. (*Id.*) On 12/6/05, mental status examination revealed rapid/pressured speech, preoccupied thought content, and tearful behavior. (Tr. 440). On 5/24/06, Ms. Ross noted that Plaintiff was "easily overwhelmed," not sleeping, cares about nothing, and feels helpless and hopeless. (Tr. 425). On 3/28/07, Plaintiff reported not sleeping, not eating, feeling helpless and hopeless. (Tr. 641). On 9/18/07, she was overwhelmed and very upset. (Tr. 655). She reported that her medications were not working but the therapist stated: "did not change [medications] this appointment because client was so upset." (Tr. 656).

Ms. Ross opined that Plaintiff was extremely irritable and frequently overwhelmed. (*Id.*) However, the ALJ found that the opinion of Ms. Ross was "less than credible when viewed within the context of the entire record." (Tr. 827). While Ms. Ross is not a primary acceptable medical source, as defined in the regulations (20 CFR 404.1513 and 416.913), the degree of limitation she describes is well-supported by substantial evidence in the record, as detailed above.

SSR 06-03P clarifies how the Commissioner is to consider opinions and other evidence from sources such as Ms. Ross, who are not acceptable medical sources. That Ruling notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources'...have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologist. Opinions from these medical sources who are not technically deemed 'acceptable medical sources,' under our rules, are important and should be evaluation on key issues such as impairment severity and functional effects, along with the other evidence in the file.

-13-

Further, Ruling 06-03P explains that opinions from non-medical sources should be evaluated by applying the same factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Martin v. Barnhart*, 470 Supp.2d 1324, 1328-29 (D. Utah 2006). Here, the opinion of Ms. Ross is supported by Dr. Boerger's reports and by Plaintiff's treatment history at MCMH. Once again, the ALJ improperly relied upon the opinions of Dr. Marlow, Dr. Boerger, and Dr. Buban as support for his rejection of Ms. Ross' opinion. As discussed previously, the opinion of Dr. Marlow lacks merit on several grounds and cannot be relied upon as substantial evidence. The opinion of non-examining psychological expert, Dr. Buban, also cannot be relied upon for reasons discussed *infra*. This leaves only the opinion of Dr. Boerger, whose limitations, when read in the context of the Plaintiff's treatment notes and in conjunction with the opinion from Ms. Ross, support a finding of disability.

In summary, the ALJ erred by selecting those aspects of Dr. Boerger's report that supported his conclusions while ignoring others. The marked limitations provided by Dr. Boerger are supported by the substantial weight of the evidence. The record supports a finding that if Plaintiff has marked limitation in her ability to tolerate day-to-day work stress due to a combination of anger outbursts, difficulty concentrating, irritability, and low frustration tolerance, she would also have an inability to stay on task for a substantial

-14-

part of the work day.[10]

**B.**

Next, Plaintiff maintains that the ALJ committed reversible error by relying on the opinion of psychological expert, Dr. Buban, who testified at the Plaintiff's hearing in July 2006, because Dr. Buban did not have the opportunity to review the entire medical record. The ALJ relied upon the opinion of Dr. Buban as support for his interpretation of Dr. Boerger's evaluations finding that "the functional limitations described by Dr. Marlow and Dr. Buban are found to represent a credible estimation of the claimant's functional capacity based on mental considerations." (Tr. 328).

In *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), the Court held that the opinion of a non-examining psychologist could be given deference over the opinion of a consulting psychologist only where the non-examining psychologist had access to the entire medical record and a chance to observe the claimant during an administrative hearing. In the instant case, the non-examining psychologist, Dr. Buban, did not have access to the entire medical record. At the time of her testimony, the record contained medical exhibits 1-16F. (Tr. 773). When the case was remanded to the Commissioner in October of 2009, it was remanded for the purpose of obtaining additional medical records that were not contained in the file at the time of the hearing with Dr. Buban. (Tr. 850).

---

[10] The vocational expert testified that if an individual would be off-task periodically throughout a work day, defined as consistently failing to meet work task expectations on a repetitious basis, that individual would be terminated. (Tr. 1229-30).

-15-

The records from MCMH, which were relied upon heavily by Dr. Buban, only contained treatment notes through August of 2005. (Tr. 178). When the file came before the ALJ for a third hearing in October of 2010, it consisted of medical exhibits 1-68F, including mental health treatment notes dated through June of 2010. (Tr. 1181).

It was therefore improper for the ALJ to rely upon the opinion of a psychological expert in determining the Plaintiff's mental functional residual capacity when the psychological expert was not afforded the opportunity to review the medical evidence in its entirety.

## III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of the extensive medical record of evidence of disability, the credible and controlling findings and opinions of treating physician and nurse, the mental health records, and the opinion of the vocational expert that no jobs exist based on Plaintiff's limitations, proof of disability is overwhelming.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to a disability insurance benefits and supplemental security income beginning January 8, 2001, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **REVERSED**; and this matter is **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case is **CLOSED**.

Date: 12/6/11

Timothy S. Black
United States District Judge